OPINION
Relator-appellant, Karen Sensel, appeals from a decision of the Butler County Court of Common Pleas which found that respondent-appellee, Dr. Dennis Leone, the Superintendent of the Talawanda School District, did not dispose of "records" in violation of R.C. 149.351 of the Ohio Public Records Act. Sensel also appeals from the trial court's denial of her claim for attorney fees and a forfeiture.
In December 1994, Susan Vallade complained to Talawanda administrators that her son was being abused by Tom Holmes, a Talawanda basketball coach. In February 1995, Vallade sent letters to the parents of former and current basketball players encouraging them to write to Talawanda administrators to express their concerns regarding Holmes. Dr. Leone received approximately twelve letters from the parents of former and current players ("parents' letters"). Some of the letters criticized Holmes for being abusive, while others were complimentary and several were anonymous. After reviewing the parents' letters, Dr. Leone determined that an investigation into the parents' allegations was not necessary, and he disposed of the parents' letters shortly thereafter.
On February 22, 1995, Vallade wrote a letter to Dr. Leone ("Vallade letter") alleging that Holmes was abusive towards her son and formally requesting an investigation into her allegations. After receiving Vallade's letter, Dr. Leone directed the principal of Talawanda High School to conduct an investigation into the alleged abuse of Vallade's son. After completing his investigation, the principal wrote a letter to Vallade on May 1, 1995 and informed her that her allegations of abuse lacked merit. Nonetheless, Holmes subsequently resigned as the Talawanda basketball coach.
In May 1995, Sensel began making requests for public records from the Talawanda School District. Over the next six months, Sensel made eighteen requests, including a request for correspondence regarding the employment and resignation of Holmes. In response to Sensel's requests, Dr. Leone produced over one thousand eight hundred pages of documents, including Holmes' personnel file. Holmes' personnel file contained a copy of the Vallade letter. However, none of the parents' letters were produced to Sensel.
On October 30, 1995, Sensel filed a complaint for mandamus pursuant to R.C. 149.43 to compel the production of the parents' letters. In the alternative, Sensel alleged that Dr. Leone disposed of the parents' letters in violation of R.C. 149.351.
On October 31, 1995, an additional file, designated as the "Vallade file," was produced to Sensel. On November 10, 1995, another file, designated as the "McCutcheon/Vallade file," was produced to Sensel. Although both of these files contained correspondence between Vallade and Talawanda administrators concerning Vallade's specific allegations of abuse, neither of the files contained any of the parents' letters.
An evidentiary hearing was held on January 18, 1996 and Dr. Leone acknowledged that he had disposed of the parents' letters shortly after he received them. On March 31, 1997, the trial court issued a writ of mandamus, pursuant to R.C. 149.43, and ordered Dr. Leone to produce all of the correspondence relating to Holmes that had been retained. However, the trial court denied Sensel's request for attorney fees pursuant to R.C. 149.43. In addition, the trial court found that since the parents' letters were not "records" as defined by the Ohio Public Records Act, Dr. Leone did not violate R.C. 149.351 by disposing of them. Thus, the trial court denied Sensel's request for attorney fees and a forfeiture pursuant to R.C. 149.351.
On appeal, Sensel raises two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE RELATOR-APPELLANT BY INCORRECTLY DETERMINING THAT LETTERS FROM PARENTS COMPLAINING OF AN ABUSIVE COACH WERE NOT PUBLIC RECORDS UNDER THE OHIO PUBLIC RECORDS ACT, R.C. 149.43 et. seq., AND THEREFORE, COULD BE DESTROYED BY THE RECORDS CUSTODIAN.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE RELATOR/APPELLANT BY FAILING TO AWARD REASONABLE ATTORNEY FEES FOR DEFENDANT/APPELLEE'S FAILURE TO PRODUCE LETTERS REQUESTED UNDER THE PUBLIC RECORDS ACT.
In her first assignment of error, Sensel argues that the trial court erred by finding that Dr. Leone did not violate R.C.149.351 because the parents' letters did not constitute "records" as defined by the Ohio Public Records Act. R.C. 149.351(A) prohibits the removal, destruction, mutilation, transfer, or disposal of "records" except as provided by law or under the rules adopted by a records commission. R.C. 149.011(G) broadly defines "records" to include "any document, device, or item, * * * received by * * * any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."
It is well-established that the definition of "records" is to be given an expansive rather than a restrictive construction in order to maintain the public's right of access to public records. See, e.g., State ex rel. Plain Dealer Publishing Co. v. Cleveland, 75 Ohio St.3d 31 (finding that R.C. 149.011(G) included resumes of applicants for police chief vacancy); State ex rel. Multimedia, Inc. v. Snowden, 72 Ohio St.3d 141 (finding that R.C. 149.011(G) included personal background and investigation reports for recruits of police class); State ex rel. Thomas v. Ohio State Univ. (1994), 71 Ohio St.3d 245
(finding that R.C. 149.011(G) included the names and work addresses of animal research scientists); State ex rel. Beacon Journal Publishing Co. v. Akron (1994), 70 Ohio St.3d 605
(finding that R.C. 149.011[G] included social security numbers of city employees).
In the present case, Dr. Leone testified that after reviewing the parents' letters, he decided that it was not necessary to investigate the allegations of abuse raised in some of those letters. However, since Dr. Leone disposed of the parents' letters, the public is unable to review the allegations and evaluate Dr. Leone's decision not to investigate them. Thus, we find that the parents' letters were items received by Dr. Leone which served to document his decision not to investigate the allegations of abuse raised in several of those letters.[1]
Accordingly, we conclude that the parents' letters constituted "records" as defined in R.C. 149.011(G).
Dr. Leone asserts that even if the parents' letters fall within the definition of a "record" in R.C. 149.011(G), he was not required to retain the parents' letters pursuant to R.C. 149.40. R.C. 149.40 provides:
 The head of each public office shall cause to be made only such records as are necessary for the adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and for the protection of the legal and financial rights of the state and persons directly affected by the agency's activities.
Dr. Leone argues that the retention of parents' letters was not necessary for the adequate and proper documentation of his decisions. Due to the seriousness and significance involved whenever abuse by a teacher and coach is alleged, it is essential for school administrators to fully document the investigative and disciplinary decisions that are made in response to such allegations. Dr. Leone testified that he decided not to investigate the allegations of abuse raised in some of the parents' letters because he questioned the veracity and reliability of the letters. Thus, the investigative decision that Dr. Leone made in response to the allegations of abuse cannot be evaluated by the public without reviewing the contents of the parents' letters. Accordingly, we find that the retention of the parents' letters was necessary for the adequate and proper documentation of Dr. Leone's investigative decisions concerning the allegations of abuse raised in some of the parents' letters.
Dr. Leone also asserts that if he was required to retain unsolicited letters that criticize school employees, citizens would be able to create unfavorable personnel files with unsubstantiated and inaccurate information. Initially, we note that our holding does not require that such letters be maintained in a teacher's personnel file and a school administrator is not prevented from creating a separate file for these letters. Moreover, even if Dr. Leone's concerns have some merit, this is a public policy consideration for the General Assembly. Thomas,71 Ohio St.3d at 249; State ex rel. James v. Ohio State Univ. (1994), 70 Ohio St.3d 168,172. "In enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure." Thomas at 249, quoting James at 172.
Based upon the foregoing, we find that the parents' letters constituted "records" for purposes of the Ohio Public Records Act. Further, we find that Dr. Leone improperly disposed of the parents' letters in violation of R.C. 149.351(A). Accordingly, the trial court erred and Sensel's first assignment of error is sustained.
In Sensel's second assignment of error, she asserts that the trial court erred by failing to award her attorney fees and a forfeiture. Sensel argues that she is entitled to attorney fees for her mandamus action pursuant to R.C. 149.43. Sensel also argues that she is entitled to attorney fees for her civil action and a forfeiture pursuant to R.C. 149.351.
Sensel first argues that she is entitled to attorney fees pursuant to R.C. 149.43. R.C. 149.43(C) provides in part:
 If a person allegedly is aggrieved by the failure of a governmental unit to promptly prepare a public record and to make it available to him for inspection in accordance with division (B) * * * the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the governmental unit or the person responsible for the public record to comply with division (B) * * * and that awards reasonable attorney's fees to the person that instituted the mandamus action. * * *.
A court has discretion to award attorney fees to a relator that prevails in a mandamus action brought pursuant to R.C.149.43. State ex rel. Olander v. French (1997), 79 Ohio St.3d 176,180-181 (Douglas, J., dissenting and finding that R.C.149.43 provides for mandatory attorney fees to a prevailing party, joined by Alice Robie Resnick, and Francis E. Sweeney, JJ.). In addition, a court has discretion to award attorney fees where a relator receives requested public records after a mandamus action is filed but before a final judgment is rendered. State ex rel. Pennington v. Gundler (1996), 75 Ohio St.3d 171, paragraph one of the syllabus (State ex rel. Toledo Blade Co. v. Northwood [1991], 58 Ohio St.3d 213, overruled). The Supreme Court reasoned that such a rule was necessary because of the "proclivity of some custodians of public records to force the filing of a mandamus action by a citizen to gain access to records that are obviously public." Pennington at 174.
In the present case, mandamus was granted in Sensel's favor. Thus, she was a prevailing party and the trial court had discretion to award attorney fees pursuant to R.C. 149.43. In addition, since Sensel received two additional files of requested public records, the Vallade file and the McCutcheon/Vallade file, after she filed her mandamus action but before judgment was entered, attorney fees were also discretionary according to the holding in Pennington.
In determining whether to award attorney fees pursuant to R.C.149.43, a court should consider "the degree to which the public will benefit from the release of the records." Olander at 179; State ex rel. Fox v. Cuyahoga Cty. Hosp. System (1988), 39 Ohio St.3d 108. In addition, since attorney fees are punitive in nature, a court may also consider the reasonableness of a respondent's refusal to comply with the relator's request and whether the respondent acted in good faith. Id. See, also, State ex rel. Mazzaro v. Ferguson (1990), 49 Ohio St.3d 37, 41. Since a court has discretion to award attorney fees pursuant to R.C.149.43, a denial of attorney fees will not be reversed unless it is "`unreasonable, arbitrary, or unconscionable.'" Mazzaro at 41, quoting State ex rel. Beacon Journal Publishing Co. v. Akron Metro. Hous. Auth. (1989), 42 Ohio St.3d 1, 2.
After reviewing the record, we find that the trial court's denial of Sensel's request for attorney fees pursuant to R.C.149.43 was not an abuse of discretion. Prior to the filing of Sensel's mandamus action, Dr. Leone had already produced over one thousand eight hundred pages of public records in response to the eighteen requests made by Sensel. Several of Sensel's requests were broad and/or vague and required Talawanda officials to search records that were maintained in several different files and offices. Nonetheless, with the exception of the Vallade file and the McCutcheon/Vallade file, Dr. Leone produced all of the requested records that had been retained by the school district prior to Sensel filing her mandamus action. The Vallade file and the McCutcheon/Vallade file contained correspondence between Susan Vallade and Talawanda administrators concerning her allegations of abuse. However, some of this correspondence had already been produced to Sensel.
Based upon the foregoing, the record supports a finding that the public benefit of Sensel's mandamus action was minimal since it really did not achieve any expanded access to public records. See Olander at 180. Further, the record also supports a finding that Dr. Leone acted reasonably and in good faith to satisfy Sensel's requests. Accordingly, we conclude that the trial court's denial of Sensel's request for attorney fees for her mandamus action pursuant to R.C. 149.43 was not "unreasonable, arbitrary, or unconscionable."
Sensel also argues that she is entitled to attorney fees and a forfeiture for her civil action brought pursuant to R.C.149.351(B). An award of attorney fees and a forfeiture, pursuant to R.C. 149.351(B), appears to be an issue of first impression in Ohio. R.C. 149.351(B) provides:
 Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record * * * may commence * * * the following * * *:
 (2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action.
When interpreting a statute, "`a court's paramount concern is the legislative intent in enacting the statute. * * * In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished.'" State ex rel. Carter v. Wilkinson (1994), 70 Ohio St.3d 65, 66, quoting State v. S.R. (1992), 63 Ohio St.3d 590, 594-595. "Words used in a statute are to be taken in their usual, normal and customary meaning." Pennington, 75 Ohio St.3d at 173, citing R.C.1.42.. Further, unless a statute is ambiguous, the court must give effect to the plain meaning of a statute. Id., citing State v. Waddell (1995), 71 Ohio St.3d 630, 631.
From a plain reading of R.C. 149.351(B), only a person who is "aggrieved" by the improper disposition of a record is entitled to statutory damages and an award of attorney fees.[2] See Hughes v. City of North Olmsted (Jan. 23, 1997), Cuyahoga App. No. 70705, unreported, pg. 5. The Ohio Public Records Act does not define "aggrieved." However, Webster's Third New International Dictionary (1986) 41, defines aggrieved, in relevant part, as "having a grievance; specif. suffering from an infringement or denial of legal rights."
The purpose of the Ohio Public Records Act is also helpful in determining who is "aggrieved" for purposes of R.C. 149.351(B). "The purpose of the Ohio's Public Records Act, * * *, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." State ex rel. Gannett Satellite Network, Inc. v. Petro (1997), 80 Ohio St.3d 261,264, citing State ex rel. WHIO-TV-7 v. Lowe (1997), 77 Ohio St.3d 350,355. Scrutiny of public records allows citizens to evaluate the rationale behind government decisions so government officials can be held accountable. See White v. Clinton Cty. Bd. of Commrs. (1996), 76 Ohio St.3d 416, 420. Based upon the plain language in R.C. 149.351 and the purpose of the Ohio Public Records Act, we conclude that a person is "aggrieved" where the improper disposition of a record infringes upon a person's legal right to scrutinize and evaluate a governmental decision.
In the present case, Dr. Leone testified that he disposed of approximately twelve of the parents' letters. However, Sensel obtained copies of eight of the parents' letters from Vallade and produced them at trial. Thus, Sensel's legal right to scrutinize and evaluate Dr. Leone's decision not to investigate the allegations of abuse in the parents' letters was infringed upon due to the improper disposition of the four remaining letters. Accordingly, Sensel was "aggrieved" by the improper disposition of four records.[3]
Pursuant to R.C. 149.351(B)(2), an "aggrieved" person is entitled to recover a forfeiture of $1,000 for each violation of R.C.149.351. Since we have found that Sensel was "aggrieved" by the improper disposition of four records, we conclude that she is entitled to a mandatory forfeiture of $4,000.
Although Sensel argues that an award of attorney fees is also mandatory pursuant to R.C. 149.351(B)(2), we find that an award of attorney fees is discretionary. The statutory language relating to an award of attorney fees is similar in R.C. 149.43
and 149.351.[4] Most importantly, both provisions provide for an "award" of attorney fees. In determining that attorney fees under R.C. 149.43 were discretionary, the Ohio Supreme Court primarily relied upon the definition of "award." See Fox,39 Ohio St.3d 108. "Black's Law Dictionary (5 Ed. 1979) 125, defines `award' as `* * * to give or assign by sentence of judicial determination or after careful weighing of evidence. * * * To confer as being deserved or merited.'" Fox at 111. Since the majority of the Supreme Court continues to follow this interpretation of R.C. 149.43 and the definition of "award" is equally applicable to R.C. 149.351(B)(2), we conclude that an award of attorney fees pursuant to R.C. 149.351(B) is also discretionary.
As previously discussed, when addressing whether an award of attorney fees is warranted in the context of R.C. 149.43, a court considers the degree to which the public will benefit from release of the records. Olander, 79 Ohio St.3d at 179; Fox,39 Ohio St.3d 108. In addition, a court may consider the reasonableness of a respondent's refusal to comply with a relator's request and whether the respondent acted in good faith. Id. See, also, Mazzaro, 49 Ohio St.3d at 41.
We find that a similar analysis should be used in determining whether to award attorney fees pursuant to R.C. 149.351(B)(2). Thus, we must determine the degree to which the public will benefit from Sensel's civil action brought pursuant to R.C.149.351. In addition, we may also consider whether Dr. Leone acted reasonably and in good faith when he improperly disposed of records in violation of R.C. 149.351.
Sensel's action presented a case of first impression under Ohio Public Records laws and the scope of the records that need to be retained by a school district was not clearly defined. As a result of Sensel's action, school administrators, or at least Talawanda administrators, will likely retain letters and other items to fully document the investigative decisions that they make concerning allegations of abuse. Thus, the public will be able to fully analyze the investigative and disciplinary decisions made by school administrators and the public has benefitted from Sensel's action. Although the record also supports a finding that Dr. Leone acted reasonably and in good faith when he determined that the parents' letters did not need to be retained, we find that this public benefit is sufficient to support an award of attorney fees. See White v. Clinton Cty. Bd. of Commrs. (1997), 77 Ohio St.3d 1267, 1268; Mazzaro at 41. Accordingly, we conclude that Sensel is entitled to an award of the reasonable attorney fees that she incurred in her civil action brought pursuant to R.C. 149.351.
Sensel's second assignment of error is overruled with respect to her mandamus action and sustained with respect to her civil action under R.C. 149.351. This case is remanded to the trial court with instructions to enter a forfeiture in Sensel's favor for $4,000 and to award Sensel the reasonable attorney fees that she incurred in her civil action. We realize that it may be difficult to distinguish the attorney fees that Sensel incurred for her civil action from the attorney fees that she incurred for her mandamus action. However, where it is possible to distinguish those fees, the trial court is instructed on remand to award only those attorney fees that Sensel incurred for her civil action brought pursuant to R.C. 149.351.
Judgment affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
WALSH and POWELL, JJ., concur.
[1] Similarly, the Vallade letter is an item received by Dr. Leone which served to document his decision to investigate Vallade's specific allegations of abuse. However, since Dr. Leone retained a copy of the Vallade letter, the public is able to review Vallade's allegations of abuse and evaluate Dr. Leone's decision to investigate her allegations.
[2] In contrast, R.C. 149.43(C) provides that "any person allegedly aggrieved" may bring a mandamus action to compel the disclosure of public records and obtain an award of attorney fees.
[3] It may be argued that Sensel was not "aggrieved" because she has never resided in the Talawanda School District and apparently requested records for her daughter who resides there and is the education chair of the League of Women Voters. However, R.C.149.43(B) states that "all public records shall be promptly prepared and made available for inspection to any person. (Emphasis added.) "`Any person' means any person regardless of purpose." State ex rel. Fant v. Enright (1993), 66 Ohio St.3d 186,188; State ex rel. Clark v. Toledo (1990), 54 Ohio St.3d 55,57. Thus, anyone, including a designee, may request public records and their motive is irrelevant. Id. See, also, State ex. rel. Steckman v. Jackson (1994), 70 Ohio St.3d 420. Moreover, R.C. 149.351(B) provides for "any person who is aggrieved." Thus, even though Sensel did not reside in the Talawanda District and appears to have been a designee for her daughter, these facts do not prevent her from being "aggrieved."
[4] R.C. 149.43(C) provides:
 * * * the person allegedly aggrieved may commence a mandamus action to obtain a judgment * * * that awards reasonable attorney's fees to the person that instituted the mandamus action.
R.C. 149.351(B) provides:
 Any person who is aggrieved by the * * * disposition of a record * * * may commence * * *:
* * *
 (2) A civil action to * * * obtain an award of the reasonable attorney's fees incurred by the person in the civil action.